## A99A1524. STARKS v. THE STATE.
(523 SE2d 397)

SMITH, Judge.

Roosevelt Starks was indicted by a Barrow County grand jury on two counts of selling cocaine. After the denial of his motion to suppress evidence seized in a search of his home pursuant to a warrant, he was tried by a jury. At the conclusion of the State's evidence, the trial court directed a verdict of acquittal on Count 1. The jury found Starks guilty of Count 2. His motion for new trial was denied, and he appeals, raising five enumerations of error. We find no merit in any of Starks's contentions, and we affirm the judgment.

Construed to support the jury's verdict, the evidence presented at trial showed that in early June 1997, the Piedmont Northern Multi-Agency Narcotics Squad (MANS) Unit received information from an informant, John Wall, that he had purchased cocaine from Starks. Wall informed the squad that he was a cocaine addict trying to kick the habit, that Starks "was supplying a lot of people on the streets with cocaine," and that he wanted to help the squad get Starks off the street. He also wished to be paid for his help. The officers agreed to work with Wall, and Wall made two controlled buys from Starks. Wall was paid $120 for his services.

Investigator Jimmy Purvis, who was assigned to the MANS Unit at the time, testified that for the first buy, he, Wall, and another officer met at a neutral location. Wall and his car were searched to ensure that he had not brought any controlled substances or weapons, and Wall was given $150 and a pocket cassette recorder. After being given instructions, Wall left to purchase the drugs. Law enforcement agents in one unmarked car followed him, another unmarked car stayed a short distance away for backup, and Purvis followed the buy in a helicopter. He kept Wall within sight and observed him drive to the buy location, stay there for five or ten minutes, and leave. Wall returned and gave Purvis the crack cocaine he had purchased, along with $10 he had not spent. Wall and his car

were again searched, and no drugs or money were found. Unfortunately, the tape recorder had not functioned because Wall accidentally pressed the wrong button.

Several days later, Wall met with the officers again to make a second controlled buy. Wall and his car were again searched, and he was given $60 in $20 bills to make the purchase. This time, however, the bills were photocopied before they were given to Wall. Wall was again followed to the location. When he arrived at Starks's home, Starks was sitting on the porch with his family. Wall bought $60 worth of crack cocaine, and he left. He was followed by the two unmarked cars, and after turning over the drugs, again he and his car were searched and he was paid. This time, Wall's cassette recorder worked, and the transaction was captured on the recording.

Purvis then obtained a no-knock search warrant for Starks's residence. The warrant was executed, and officers found $378 in cash, including the three photocopied bills that were given to Wall. Those bills were found in the pocket of a pair of pants in Starks's bedroom. No drugs were found, but the officers found several weapons. Starks was arrested, and when given the opportunity to dress, he chose the pants in which the photocopied bills were found, which also contained identification belonging to him.

The substance purchased by Wall tested positive for cocaine. The State also introduced evidence of a 1988 transaction in which Starks made several sales of cocaine from his home and pled guilty to the crime. Wall identified Starks at trial as the person from whom he bought cocaine.

1. Starks contends the trial court erred in denying his motion to suppress the three photocopied bills seized in the search of his home. He asserts two bases for suppression. First, he maintains that because the affidavit of Purvis in support of the warrant was based entirely on information given to Purvis by Wall but did not establish that Wall was reliable, the affidavit was insufficient. Second, he asserts that the affidavit contains material misrepresentations and omissions that were either knowingly false or made with reckless disregard for the truth and were essential to establish probable cause. We do not agree with either contention.

The affidavit does not rely solely on the information given to Purvis by Wall; it also contains other information. Purvis swore that the Barrow County Sheriff's Office informed him that it had received information that Starks was selling crack cocaine. He also swore that he was told by detectives from Athens-Clarke County that they had arrested several persons who stated they had bought crack cocaine from Starks. Purvis also stated in his affidavit that Starks had four previous arrests for drug charges, including possession and sale of cocaine. More importantly, the controlled buy at Starks's home

proved the reliability of the informant, and this alone provided probable cause for the search warrant.

We can find no material misrepresentations in the affidavit. Although it would have been better practice to disclose that Wall had pending charges against him and that he was paid, no evidence exists that these omissions were deliberate. Purvis informed the magistrate that Wall was an admitted drug addict and had bought drugs in the past. Moreover, even if this allegedly discrediting omitted material had been included, the affidavit would have been sufficient to support the magistrate's conclusion that the informant was reliable and that probable cause existed for the search. *Gremillion v. State*, 233 Ga. App. 393, 394-395 (1) (504 SE2d 265) (1998).

Finally, Purvis independently confirmed that illegal drugs were being sold at Starks's home by carrying out the first controlled buy. See *Hockman v. State*, 226 Ga. App. 521, 523 (1) (487 SE2d 102) (1997) (physical precedent only); see *Pettus v. State*, 237 Ga. App. 143, 144-145 (514 SE2d 901) (1999) (affidavit based upon affiant's "own observations"). "The question presented is whether, taking a common sense approach, the information presented to the issuing magistrate showed a reasonable probability that contraband would be found in the place to be searched." (Citation omitted.) *Perkins v. State*, 220 Ga. App. 524-525 (1) (469 SE2d 796) (1996). Clearly, it did, and the trial court did not err in denying the motion to suppress based on Starks's contentions with regard to the affidavit.

2. Starks next maintains the trial court erred in denying his motion for a mistrial, made immediately after Purvis responded to a question on direct examination by stating that a stolen gun was found in the search of Starks's home. Starks argued that he had not been charged with that crime, so this evidence placed his character in issue. The prosecutor responded by stating that the witness's reply was inadvertent, and because the gun could have belonged to other members of Starks's household, the answer did not necessarily prejudice Starks. The motion for mistrial was denied.

Starks argues that the record does not support the State's assertion that the answer was inadvertent, because it was specifically and directly responsive to the question asked. He asserts that under "remarkably similar" facts in *Chavous v. State*, 205 Ga. App. 455 (422 SE2d 327) (1992), we held that the defendant's character had been placed in issue improperly and a mistrial was warranted.

But the facts in *Chavous* are, in fact, remarkably dissimilar. In that vehicular homicide case, the defense and the State agreed prior to trial that in exchange for a defense stipulation as to blood alcohol level and the cause of the victim's death, the State would not introduce evidence of prior similar transactions. Id. at 456 (2). To avoid violating this agreement, a State's witness, a sheriff's deputy who

participated in the investigation, was instructed to limit his testimony to stating that he ran a computer check and determined the defendant's license had expired. The witness was explicitly cautioned not to mention finding several previous traffic citations in the defendant's car. But when asked whether he had determined that the defendant had an expired driver's license, the witness responded that he had found the old citations in the car in the course of the investigation. Id. at 456-457. The trial court denied the defense motion for a mistrial but gave a curative instruction. This court reversed, holding that the case was controlled by *King v. State*, 261 Ga. 534-536 (2) (407 SE2d 733) (1991), in which an officer's failure to comply with a previous ruling prohibiting mention of the defendant's prior jail term required reversal of the denial of the motion for mistrial.

In this case, no specific instruction or ruling was violated. The witness simply responded to a question asking what was found in the search of Starks's home, and the trial court expressly found that the response was inadvertent and gave a thorough curative instruction to the jury. In fact, the trial court questioned the jurors as to whether they could ignore the answer, and the jurors indicated that they could. The decision whether to grant a mistrial is within the sound discretion of the trial court, and the ruling will not be disturbed absent abuse. *Osborn v. State*, 233 Ga. App. 257, 258 (1) (504 SE2d 74) (1998). Under the circumstances presented here, the curative instruction to the jury was sufficient. See *Maddox v. State*, 227 Ga. App. 602, 603 (2) (490 SE2d 174) (1997). The trial court did not abuse its discretion in denying the motion for a mistrial.

3. Starks contends the trial court erred in allowing the State to introduce a prior conviction for sale of cocaine as a similar transaction because it was ten years old and insufficiently similar. We do not agree.

The State introduced the similar transaction evidence to show Starks's bent of mind and course of conduct and to corroborate Wall's testimony. The trial court permitted it and gave the jury a detailed limiting instruction. The similarity between the similar transaction and the charged crime was striking. Both were for the same offense, involved sales of similar amounts of the same drug, and took place at Starks's home. Similar transactions more than ten years old have been allowed. *Goodroe v. State*, 238 Ga. App. 66, 68 (2) (a) (518 SE2d 139) (1999).

Starks also asserts that the trial court's refusal to accept his stipulation of the prior conviction was error under *Old Chief v. United States*, 519 U. S. 172 (117 SC 644, 136 LE2d 574) (1997). But *Old Chief* involved a federal crime and a federal trial, under the Federal Rules of Evidence. And "the interpretation of Rule 403 of the Federal Rules of Evidence by the Supreme Court of the United States

simply is not any precedent binding on this Court regarding the admissibility of similar crimes or extrinsic acts evidence." *Sisson v. State*, 232 Ga. App. 61, 66 (3) (b) (499 SE2d 422) (1998). Here, the State declined to accept the offered stipulation, and the trial court ruled that it lacked authority to force the State to do so. Moreover, in Georgia, the determination that the probative nature of similar transaction evidence outweighs its prejudicial effect is implicit in the trial court's ruling allowing its admission. Id. The trial court did not err in admitting the similar transaction.

4. Over Starks's "continuing witness" objection, the trial court allowed the crime lab report to go out with the jury. We do not agree with Starks that this was error.

> In Georgia, the continuing witness objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once.

(Citation and punctuation omitted.) *Gough v. State*, 236 Ga. App. 568, 569-570 (2) (512 SE2d 682) (1999). It usually is applied to testimonial documentary evidence, such as affidavits and depositions. It has also been applied to written confessions, statements, and dying declarations. *Buckner v. State*, 219 Ga. App. 71, 74 (5) (464 SE2d 11) (1995). The lab report was admitted into evidence without objection, and the forensic chemist did not read the results into evidence. The trial court correctly ruled that the report was original evidence, not subject to the objection raised. The report was

> direct evidence of the manner in which a scientific test was conducted and of the results thereby obtained. The proscription on the jury's possession of written testimony does not extend to documents which are themselves relevant and admissible as original documentary evidence in a case.

(Citations and punctuation omitted.) *Whiteley v. State*, 188 Ga. App. 129, 132 (3) (372 SE2d 296) (1988).

5. Starks contends that his motion for a directed verdict of acquittal, made at the close of the State's evidence, should have been granted. He argues that no drugs were found at his residence and that no eyewitness existed to the alleged drug transaction with the exception of Wall, who was "thoroughly discredited and impeached," according to Starks. He also asserts that he offered a reasonable explanation for possessing the photocopied bills. We do not agree.

Not only was the drug transaction in question captured on a tape that was played for the jury, Wall identified Starks as the person who sold him crack cocaine. In addition, the three photocopied $20 bills that were found in Starks's pants and the search of Wall before and after the transaction rule out the possibility that he brought the drugs to the buy himself. Although the evidence was circumstantial, the State need not exclude every hypothesis other than Starks's guilt; it need only exclude every reasonable hypothesis. *Martin v. State*, 228 Ga. App. 59, 61 (1) (491 SE2d 142) (1997). Contrary to Starks's assertion, the only explanation he offered for possessing the photocopied bills was that they were given to him by Wall in repayment of a loan. Contrary to Starks's assertion, it is not reasonable that Starks, who was disabled and on a fixed income, would lend money to persons he barely knew.

Starks's assertion that the forensic chemist could not state with certainty that the material tested was cocaine is belied by the record. The expert testified unequivocally that based upon the two tests he performed, the material contained cocaine.

The evidence did not demand a verdict of acquittal, and the trial court did not err in denying Starks's motion for a directed verdict.

*Judgment affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 13, 1999 — 

*Virgil L. Brown & Associates, Bentley C. Adams III,* for appellant.

*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney,* for appellee.