## A02A1906. TANNER v. THE STATE.
### (576 SE2d 71)

MIKELL, Judge.

Benny Tanner was convicted of four counts of aggravated assault, one count of attempted child molestation, and two counts of possession of a firearm by a convicted felon. On appeal from the denial of his motion for new trial, Tanner contends that (1) the evidence was insufficient to support his convictions, (2) similar transaction evidence was erroneously admitted, (3) the state crime lab report should have been excluded from evidence, (4) trial counsel was ineffective, and (5) he was impermissibly denied the right to open and conclude the closing argument. Finding no error, we affirm.

1. Tanner first enumerates as error the trial court's denial of his motion for a directed verdict of acquittal. The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for determining the sufficiency of the evidence to support a conviction.[1] We construe the evidence in a light most favorable to support the jury's verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]

Construed in its proper light, the evidence shows that on June 6, 1999, Steve and Marie Selk held a high school graduation party for their son Nicholas. Tanner was invited to attend because he employed Nicholas and his younger brother, Jeffrey Selk. At the end of the party, Tanner, who planned to spend the night, entered a bedroom. An acquaintance of the Selks, 15-year-old M. N., went into the room a few minutes later.

M. N. testified that he sought out Tanner to discuss potential employment. When M. N. sat on the edge of the bed, Tanner put his feet on M. N.'s back and started rubbing it. Then Tanner wrapped his arms and legs around M. N., put his feet in the boy's crotch, asked where had he been all his life, and kissed M. N.'s back. M. N. escaped

---

[1] *Hash v. State*, 248 Ga. App. 456, 457 (1) (546 SE2d 833) (2001).
[2] *Brooks v. State*, 252 Ga. App. 389, 390 (3) (556 SE2d 484) (2001).

by telling Tanner he had to use the restroom. He informed Mr. Selk of the incident, and Mr. and Mrs. Selk and Nicholas confronted Tanner.

According to Mrs. Selk, Tanner denied the activity. Nicholas told him to reveal what had recently happened in a motel room. Tanner denied any improprieties. Mr. Selk asked him to leave, but Tanner's truck would not start. Mrs. Selk asked a friend, Shane Maine, to help jump start the battery.

Meanwhile, the tensions between Nicholas and Tanner escalated. Nicholas put his fist through one of the truck's windows and threatened to break the rest of them unless Tanner disclosed what happened in the motel room. Finally, the truck started, and Tanner began to drive away.

Nicholas warned his parents and Maine that Tanner had a gun. At that moment, Tanner fired four or five shots, according to Mrs. Selk. She testified that her husband and son hit the ground, and she was so scared that she froze still. One of the bullets hit the garage, ten feet from where she was standing. Mr. Selk testified that he and Nicholas were standing in the driveway in front of the garage when he heard at least four shots. Maine testified that he jumped into his truck and stretched out across the front seat.

Nicholas testified that Tanner fired six shots out of his window. When Nicholas saw the muzzle flash, he ducked in front of his mother's truck. The bullet passed within six inches of the roof of the vehicle.

(a) A person commits the offense of aggravated assault when he assaults with a deadly weapon, which, when used offensively against a person, is likely to or actually does result in serious bodily injury.[3] Tanner contends the verdict cannot be sustained because there was no evidence that he intended to commit a violent injury. This argument is meritless. "Intent to injure is not an element of aggravated assault with a deadly weapon. . . . It is the reasonable apprehension of harm by the victim of an assault by a firearm that establishes the crime of aggravated assault, not the assailant's intent to injure."[4] All four victims testified that they either heard or saw shots fired from Tanner's truck and were frightened as a result. This evidence authorized the jury to find beyond a reasonable doubt that the victims had been placed in reasonable apprehension of immediately receiving a violent injury.[5]

---

[3] OCGA § 16-5-21 (a) (2).

[4] *Collins v. State*, 199 Ga. App. 676, 677 (405 SE2d 892) (1991); OCGA § 16-5-20 (a) (2).

[5] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Maynor v. State*, 257 Ga. App. 151 (570 SE2d 428) (2002) (victims testified that they heard multiple gunshots hit house while they were inside).

(b) Similarly, the evidence is sufficient to support Tanner's conviction of attempted child molestation. "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."[6] "In general, the act must be inexplicable as a lawful act, and must be more than mere preparation. Yet it can not accurately be said that no preparations can amount to an attempt. It is a question of degree, and depends upon the circumstances of each case."[7] Child molestation is defined as doing "any immoral or indecent act to . . . any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."[8] In this case, Tanner's actions in wrapping himself around M. N. so as to restrain the child's arms, rubbing and kissing the child's back, placing his feet in the child's crotch, and asking where the child had been all his life were inexplicable as lawful acts. Without question, the jury was authorized to conclude, beyond a reasonable doubt, that Tanner had taken substantial steps toward the commission of child molestation.[9] The trial court did not err in denying the motion for directed verdict on this charge. ·

(c) Tanner's attack upon the sufficiency of the evidence to support his conviction of possession of a firearm by a convicted felon is predicated upon his assertion that none of the victims testified that they saw him shooting. The record belies this assertion. Nicholas testified that he saw the weapon emerge from the window of Tanner's truck, and then he saw the muzzle flash. Accordingly, the evidence was sufficient for the jury to find Tanner guilty of this offense beyond a reasonable doubt.[10]

2. Tanner enumerates as error the admission of similar transaction evidence over his objection that its prejudicial impact outweighed its probative value. Nicholas Selk testified that two to three weeks before his graduation party, he spent the night in a motel room with Tanner and Tanner's son near a job site. Nicholas went to sleep fully clothed. When he woke, Tanner's mouth was on his penis. Tanner had unzipped Nicholas's blue jeans and spread his boxers

---

[6] OCGA § 16-4-1.

[7] (Citations and punctuation omitted.) *Tucker v. State*, 182 Ga. App. 625, 626 (356 SE2d 559) (1987).

[8] OCGA § 16-6-4 (a).

[9] See, e.g., *Wittschen v. State*, 259 Ga. 448 (383 SE2d 885) (1989) (defendant offered girls money if they let him stick his hand down their pants); accord *Lopez v. State*, 258 Ga. App. 92 (572 SE2d 736) (2002) (defendant stuck hand in victim's front pocket and expressed desire to make love to her); *Colbert v. State*, 255 Ga. App. 182 (564 SE2d 787) (2002) (defendant undressed himself and child and climbed into bed with her while naked).

[10] *Jackson v. Virginia*, supra.

open. When Nicholas told Tanner to stop, he replied: "Why don't you just let me get my protein for the day[?]"

Acknowledging that the evidence was "obviously extremely prejudicial to the defendant," the trial court nevertheless overruled Tanner's objection to the introduction of this evidence for the reason that an unsolicited act of sodomy occurring so close in time to the attempted child molestation was very probative of Tanner's state of mind.

"The exception to the general rule that evidence of independent crimes is inadmissible has been most liberally extended in the area of sexual offenses. A trial court's determination that similar transaction evidence is admissible will not be disturbed absent an abuse of discretion."[11]

In *Farley v. State*,[12] the Supreme Court held that

> a trial court's finding that "other transactions" evidence is relevant necessarily constitutes an implicit finding that the probative value of that evidence outweighs its prejudicial impact. Such evidence should be admitted and the prejudicial impact of that otherwise relevant evidence is a matter for jury instruction, and is not a factor in its admissibility vel non.[13]

The Supreme Court concluded that the similar transaction evidence was not overly prejudicial because the trial court gave detailed limiting instructions before the evidence was admitted and at the close of the case.[14] Similarly, the trial court in the instant case properly instructed the jury, prior to admitting the evidence and at the close of the case. There was no abuse of discretion.

3. Tanner next contends that the trial court's admission of the state crime lab report into evidence violated the "continuing witness" rule. However, when objecting to the admission of the report at trial, Tanner stated as his sole reason that "the witness has been here to testify." "In order to preserve an objection upon a specific ground for appeal, the objection must be made at trial upon that specific ground."[15] Pretermitting whether Tanner's stated reason for his objection at trial sufficed to invoke the ground asserted on appeal,

---

[11] (Citations and punctuation omitted.) *Livery v. State*, 233 Ga. App. 332, 334 (1) (a) (503 SE2d 914) (1998).

[12] 265 Ga. 622 (458 SE2d 643) (1995).

[13] Id. at 625 (2).

[14] Id.

[15] (Citation and punctuation omitted.) *Turner v. State*, 241 Ga. App. 431, 435 (4) (526 SE2d 95) (1999).

the trial court did not err in allowing the crime lab report to go out with the jury. Indeed, this argument was rejected in *Starks v. State*:[16]

> In Georgia, the continuing witness objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once. It usually is applied to testimonial documentary evidence, such as affidavits and depositions. It has also been applied to written confessions, statements, and dying declarations. [However, t]he lab report . . . was direct evidence of the manner in which a scientific test was conducted and of the results thereby obtained. The proscription on the jury's possession of written testimony does not extend to documents which are themselves relevant and admissible as original documentary evidence in a case.[17]

In this case, the lab report reflected the results of tests run on three bullets and two cartridge cases removed from the crime scene. Accordingly, the report was properly admitted as original evidence.[18]

4. Tanner next argues that the trial court erred in refusing to grant his motion for new trial because he received ineffective assistance of counsel. We disagree.

Tanner bears the burden of establishing that he received ineffective assistance, and the trial court's finding that counsel was effective will be upheld unless it is clearly erroneous.[19] To meet his burden of proof, Tanner must show not only that his trial counsel's performance was deficient, but also that the deficiency so prejudiced his defense that, but for counsel's performance, a reasonable probability exists that the result of the trial would have been different.[20]

Tanner claims that trial counsel was ineffective for failing to call Carl Turner as a witness to rebut Jeffrey Selk's similar transaction testimony. Jeffrey testified that he was employed by Tanner to do paving work, and that on occasion they would spend the night in a hotel near a job site. On two such occasions, Jeffrey, Tanner, and

---

[16] 240 Ga. App. 346 (523 SE2d 397) (1999).
[17] (Citations omitted.) Id. at 350 (4).
[18] See id.
[19] *Mency v. State*, 228 Ga. App. 640, 642 (2) (492 SE2d 692) (1997).
[20] Id., citing *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

Tanner's son slept in the same room. The first time, Jeffrey testified that when he awoke, Tanner was rubbing his upper thigh and back. Jeffrey asked him to stop, but Tanner started rubbing Jeffrey's penis on the outside of his boxers. On the second occasion, Jeffrey testified that when he woke up, Tanner was rubbing his penis inside of his shorts. Jeffrey was 15 years old when these incidents occurred.

Turner, who is Tanner's father-in-law, testified at the hearing on the motion for new trial that Jeffrey had informed him that nothing had happened with Tanner. According to Turner, he informed trial counsel and offered to testify on Tanner's behalf. However, trial counsel testified that he understood that Jeffrey Selk said he was afraid of Tanner and would not testify against him. Further, trial counsel testified that he and Tanner agreed that Turner's testimony was not necessary in addition to that of Tanner's son and a teenaged male co-worker, both of whom had been called to rebut Jeffrey's testimony. "The standard for attorney performance is reasonably effective assistance considering all the circumstances, with a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy."[21] "Deciding which defense witnesses will be called is a matter of trial strategy and tactics, and tactical errors do not constitute ineffective assistance of counsel."[22] The trial court, which weighed the witnesses' testimony and concluded that Turner never told trial counsel about Jeffrey's alleged statement, did not clearly err in rejecting Tanner's ineffective assistance of counsel claim.

5. Finally, Tanner contends that the trial court erred in ruling that he lost the right to open and conclude closing argument by calling witnesses to rebut the similar transaction testimony introduced by the state. We disagree.

> [T]he right to open and conclude closing argument is the constitutional right of the State. It is not a right of the defendant, but is only a privilege, or a compensation so to speak, which is given when he chooses not to introduce evidence. The criminal defendant of course has no burden of proof and no obligation to introduce evidence, and the fact that he has a right to introduce evidence does not allow him both to introduce evidence and to claim a right to open and conclude closing argument; and the particular reason he chooses to invoke his right to introduce evidence, *including*

---

[21] (Footnote omitted.) *Himmel v. State*, 246 Ga. App. 845, 848 (2) (542 SE2d 557) (2000).

[22] (Punctuation and footnote omitted.) *Williams v. State*, 253 Ga. App. 453, 455 (1) (a) (559 SE2d 512) (2002).

*the necessity of rebuttal,* does not control whether he may open and conclude argument under OCGA § 17-8-71.[23]

No case cited by Tanner supports his argument that a defendant who calls witnesses to rebut similar transaction evidence retains the privilege of opening and concluding closing argument. This enumeration is meritless.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JANUARY 9, 2003.

*Kathleen J. Anderson,* for appellant.
*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney,* for appellee.

[23] (Citations omitted; emphasis supplied.) *Howard v. State*, 204 Ga. App. 743, 744-745 (1) (420 SE2d 594) (1992).