A07A1911. KOHLMEIER v. THE STATE.
(658 SE2d 261)

PHIPPS, Judge.

After a traffic stop, Nicholas A. Kohlmeier and his two passengers were arrested; the vehicle was searched; and the three were charged with drug crimes. Kohlmeier appeals his conviction for criminal attempt to manufacture methamphetamine, contesting the sufficiency of the evidence and the lawfulness of the traffic stop and his arrest. We discern no error and affirm.

---

[10] 271 Ga. App. 692, 693 (1) (610 SE2d 647) (2005).

1. Kohlmeier contends that the evidence did not authorize the guilty verdict on the count of criminal attempt to manufacture methamphetamine.[1] "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."[2] An act constituting a "substantial step" is one

> done in pursuance of the intent, and more or less directly tending to the commission of the crime. In general, the act must be inexplicable as a lawful act, and must be more than mere preparation. Yet it can not accurately be said that no preparations can amount to an attempt. It is a question of degree, and depends upon the circumstances of each case. The phrase "inexplicable as a lawful act" does not mean that the act itself must be unlawful. Rather, it means that the act, in light of previous acts, constitutes a substantial step toward the commission of a crime. . . . [T]he "substantial step" requirement is intended to (1) ensure firmness of the defendant's criminal intent, (2) insulate from liability "very remote preparatory acts," and (3) allow for apprehension of offenders at an early stage without providing immunity for their actions.[3]

The indictment alleged that Kohlmeier committed criminal attempt to manufacture methamphetamine by performing "an act constituting a substantial step toward the commission of said offense in that [he] did possess methanol, pseudoephedrine, a cookstove and approximately 1000 books of matches containing red phosphorus, essential elements in the manufacture of methamphetamine."

On appeal from his convictions, Kohlmeier no longer enjoys a presumption of innocence, and we view the evidence in favor of the verdict.[4] We neither weigh the evidence nor assess witness credibility, but determine only whether the evidence authorized a finding of guilty beyond a reasonable doubt.[5]

So viewed, the evidence showed that on the night of January 31, 2006, a county sheriff's department issued to its officers a BOLO ("be on the lookout") for a certain truck based upon a report from a local merchant, the Food Lion, that two of its customers had left in that

---

[1] OCGA §§ 16-13-26 (3) (B); 16-13-30 (b).

[2] OCGA § 16-4-1.

[3] *Dennard v. State*, 243 Ga. App. 868, 871-872 (1) (a) (534 SE2d 182) (2000) (punctuation and footnotes omitted).

[4] See *Williams v. State*, 270 Ga. App. 424 (606 SE2d 871) (2004).

[5] Id.

truck after purchasing a large quantity of matches. The sheriff's department had requested area merchants to alert it of such a purchase, which the department considered an indication of possible impending methamphetamine manufacturing.

A patrol officer spotted at a Citgo gas station a truck that matched the description in the BOLO. The officer testified that, after the truck passed his patrol car as it left the Citgo parking lot, he "saw that the vehicle . . . didn't have a working tag light on the vehicle and it was dark, which is a violation of Georgia law," and he therefore "turned around and stopped the vehicle." Kohlmeier was the driver, and the male and female passengers matched the descriptions in the BOLO of the two recent purchasers of matches.

A K-9 unit arrived to assist in the traffic stop. As the patrol officer was checking Kohlmeier's driving license, the drug dog alerted at the driver's door seam. Kohlmeier and the passengers stepped out of the truck at the officers' request. The search of the truck yielded a box of cold medicine containing pseudoephedrine, two full bottles of HEET brand fuel treatment, a Coleman camping stove, and a can of kerosene. According to the patrol officer, the type of stove found could be used to make methamphetamine and kerosene could be used to fuel that type of stove. No matches were found at the scene, however.

Another officer, a former narcotics agent with special training regarding the clandestine manufacturing of methamphetamine, was summoned to the scene for his opinion of whether Food Lion's report, coupled with what had been discovered at the traffic stop scene, showed involvement in the manufacture of methamphetamine. He testified that two of the three main ingredients required for manufacturing the drug had been recovered: pseudoephedrine and red phosphorus, the latter being contained in the striker plates of the matchbooks. The officer further testified that HEET was essentially methanol and often used in making the drug to extract the red phosphorus from the striker plates and also to separate the pseudoephedrine out of certain types of cold medicines, including the type found in the truck. Noting the stove, the officer explained that a heat source was required to make methamphetamine. The former narcotics agent suspected impending manufacturing of methamphetamine.

Kohlmeier was handcuffed, placed in the back of a patrol car with his male passenger, and read his *Miranda* rights. Meanwhile, one of the officers returned to the scene with a shopping bag of boxes containing about 5,000 matchbooks, which he had found on the road leading back to the Citgo, the route Kohlmeier had just traveled. A device in the patrol car with Kohlmeier recorded Kohlmeier stating to his male passenger that a store likely had "ratted" about the matchbook purchases. Kohlmeier's female passenger was also arrested and

then placed in a separate patrol car. Receipts found in her possession showed recent purchases at Food Lion and a CVS store.

At trial, the former narcotics agent further explained that those involved in the clandestine manufacture of methamphetamine commonly gather the required ingredients and materials surreptitiously to avoid arousing suspicion. To that end, the necessary items generally are not obtained within a single purchase; rather, they are accumulated piecemeal.

In connection with the underlying incident, Kohlmeier's female passenger entered a negotiated guilty plea and then testified as a state witness as follows. She, Kohlmeier, and the male passenger had been friends for years. On several occasions before, the three of them had made and used methamphetamine. On the day in question, Kohlmeier and the male passenger had plans to make a small amount of the drug in a certain wooded area, where they previously had done so using the stove found on Kohlmeier's truck. When stopped by the patrol officer, the three of them were accumulating various items they needed to manufacture methamphetamine. She had purchased the cold medicine from CVS, two boxes of matches from Food Lion, and kerosene from Citgo. The male passenger had purchased three additional boxes of matches from Food Lion. And Kohlmeier had gone into a Fred's store and walked out, pulling from underneath his jacket two bottles of HEET. Somewhere "down the road," however, the male passenger had tossed the matches out the truck window.

(a) Citing OCGA § 24-4-8, Kohlmeier challenges the sufficiency of the evidence as based upon the uncorroborated testimony of his accomplice, the female passenger. That Code section provides that an accomplice's uncorroborated testimony is insufficient to support a felony conviction.[6]

> [T]he testimony of an accomplice used to convict the accused of a crime must be supported by independent corroborating evidence as to the identity and participation of the accused tending to connect him to the crime or leading to the inference that he is guilty. However, the corroborating evidence need not of itself be sufficient to warrant a conviction of the crime charged. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act will be sufficient corroboration of the accomplice to support a verdict.[7]

---

[6] *Parkerson v. State*, 265 Ga. 438 (2) (457 SE2d 667) (1995); *Smith v. State*, 238 Ga. 640, 641-642 (235 SE2d 17) (1977).

[7] *Smith*, supra (citations and punctuation omitted).

Kohlmeier's challenge fails because the incriminating testimony by the female passenger was adequately corroborated by independent evidence, including Kohlmeier's possession of essential items for manufacturing methamphetamine, his statement to his male passenger in the back of the patrol car that a store likely had "ratted" about the matchbook purchases, and the large quantity of matchbooks found discarded along the route he had just traveled.[8]

(b) Kohlmeier's challenge to the sufficiency of the evidence on the ground that his conviction rests upon the "mere possession of a Coleman cooking stove and two (2) bottles of HEET" is without merit. The whole of the evidence, construed to uphold the verdict, authorized a finding that Kohlmeier was guilty beyond a reasonable doubt of criminal attempt to manufacture methamphetamine.[9]

2. Kohlmeier argues that the stop of his truck was unlawful, asserting the stop was based upon a BOLO for individuals who merely had lawfully purchased a large quantity of matches. However, the patrol officer's testimony that the truck was stopped for being operated in violation of Georgia law authorized a determination that the stop was lawful.[10] Kohlmeier also asserts that he was never charged with any traffic violation. But "[i]t is irrelevant to this analysis that [Kohlmeier] was never charged with a traffic violation; all that is necessary is that the initial stop [was] valid."[11]

3. Kohlmeier complains that his arrest was not authorized by probable cause, pointing out that no illegal drugs were found and that certain items commonly associated with manufacturing methamphetamine also were not found. Probable cause exists if the arresting officer has reasonably trustworthy information that would allow a reasonable person to believe the accused has committed or is committing a crime.[12] In light of the BOLO dispatch, the similarities between the descriptions broadcasted and Kohlmeier's truck and passengers, the items found during the truck search, and the former narcotics agent's opinion of those items, probable cause authorized Kohlmeier's arrest.[13]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

---

[8] See *Bush v. State*, 267 Ga. 877, 878-879 (485 SE2d 466) (1997).

[9] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[10] See OCGA § 40-8-23 (d); *Franklin v. State*, 224 Ga. App. 578 (1) (481 SE2d 852) (1997).

[11] *Arena v. State*, 194 Ga. App. 883, 885 (1) (392 SE2d 264) (1990).

[12] *Brown v. State*, 278 Ga. 724, 727 (2) (609 SE2d 312) (2004); *Brown v. State*, 262 Ga. 728, 729 (2) (a) (425 SE2d 856) (1993).

[13] See *Brown*, supra, 278 Ga. at 727.

DECIDED FEBRUARY 22, 2008.

*Sean J. Lowe, David J. Dunn, Jr.*, for appellant.
*Herbert E. Franklin, Jr., District Attorney, Bruce E. Roberts, Assistant District Attorney*, for appellee.