## A08A2296. OGBURN v. THE STATE.
(674 SE2d 101)

SMITH, Presiding Judge.

John Ogburn appeals from his convictions for attempting to manufacture methamphetamine and possession of methamphetamine with intent to distribute. Ogburn argues that insufficient evidence supports his convictions and that the trial court erred by denying his motion in limine, violating the "continuing witness" rule, and allowing an expert witness to testify about the "ultimate question." For the reasons set forth below, we affirm.

Viewed in the light most favorable to the verdict, the record shows that police officers responded to a dispatch of a burglary in progress at 1:08 a.m. When the first officer arrived, the complainant inside the house reported that he "could still hear prying at the door." The officer then placed Ogburn and two other people found in the back yard of the residence under arrest.

When a police officer subsequently searched Ogburn, he found 14 small knotted plastic bags containing a white powdery substance and $889 in cash. The police also located a truck on the property that was owned by Ogburn. In the back of the truck, they found a small blue plastic storage bin with no lid. Inside the bin, the officers saw 10 aerosol cans of starter fluid, and "a big pile" of 33 red blister packs and 12 white blister packs of pseudoephedrine tablets. Each blister pack contained 24 tablets for a total of 1,080 tablets. The police also found a police scanner, various types of electronic scales, six pocket knives, and several empty plastic bags.

A forensic chemist with the GBI testified that the largest bag of "off-white solid material" provided to him tested positive for methamphetamine. While the chemist did not test the smaller bags, he testified that "they appeared to be the same as the powder that I did test." In his opinion, they "appeared to be methamphetamine, but they were not tested, so I cannot state for sure."

After a narcotics investigator testified that he had 14 years of experience in narcotics generally, "hands-on experience" with over 200 clandestine methamphetamine labs, and had worked numerous cases involving the sale and distribution of methamphetamine, the trial court qualified him as an expert in the area of "clandestine meth labs, as well as the sale and distribution of methamphetamine." The investigator testified that methamphetamine can be produced by extracting pseudoephedrine from cold medicine tablets through a chemical process. One process involves adding a solvent, such as starter fluid, to the pills.

After reviewing the evidence obtained from Ogburn's truck, the investigator testified that in his opinion, the tablets and starter fluid were going to be used for the manufacture of methamphetamine. In

his opinion, obtaining large amounts of pseudoephedrine tablets and ten cans of starter fluid was the very first and a large step toward manufacturing methamphetamine. As the investigator testified, "nobody has a cold this bad."

The investigator also testified that the small knotted bags, electronic scales, police scanner, cash, and the total amount of methamphetamine found indicated that the drugs were intended for distribution. Finally, the investigator testified that when he went to the residence where the burglary had been reported the day after Ogburn's arrest, he found evidence indicating that the occupants had been "cooking drugs."

1. (a) Ogburn contends insufficient evidence supports his conviction for attempting to manufacture methamphetamine because his possession of the psuedoephedrine tablets and the starter fluid was not "a substantial step toward the commission of the crime of manufacturing methamphetamine." We disagree.

> A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime. An act constituting a "substantial step" is one done in pursuance of the intent, and more or less directly tending to the commission of the crime. In general, the act must be inexplicable as a lawful act, and must be more than mere preparation. Yet it can not accurately be said that no preparations can amount to an attempt. It is a question of degree, and depends upon the circumstances of each case. The phrase "inexplicable as a lawful act" does not mean that the act itself must be unlawful. Rather, it means that the act, in light of previous acts, constitutes a substantial step toward the commission of a crime. The "substantial step" requirement is intended to (1) ensure firmness of the defendant's criminal intent, (2) insulate from liability "very remote preparatory acts," and (3) allow for apprehension of offenders at an early stage without providing immunity for their actions.

(Citations, punctuation and footnotes omitted.) *Kohlmeier v. State*, 289 Ga. App. 709, 710 (1) (658 SE2d 261) (2008).

Here, the jury could infer from Ogburn's possession of individually wrapped methamphetamine packages, together with *large* quantities of pseudoephedrine tablets and starter fluid, that he was attempting to manufacture methamphetamine. *Kohlmeier*, supra at 713 (1) (b). Compare *Thurman v. State*, 295 Ga. App. 616 (673 SE2d 1) (2009) (physical precedent only) (one unopened bottle of Heet, one

pack of cold pills containing pseudoephedrine, a large unopened bottle of iodine, and some plastic tubing insufficient to support conviction for attempting to manufacture methamphetamine).

(b) Ogburn contends insufficient evidence supports his conviction for possession of methamphetamine with intent to distribute. Ogburn asserts the only evidence submitted by the State in support of his conviction was the individually wrapped bags of alleged methamphetamine, only one of which was tested by a forensic chemist, and the $889 cash found on his person. Ogburn argues this evidence cannot support his conviction because: (1) the State did not test every bag containing suspected methamphetamine; and (2) he and his employer provided the jury with an innocent explanation for his possession of the cash.

We disagree for several reasons. First, Ogburn does not acknowledge that the State submitted additional evidence of Ogburn's intent to distribute. Specifically, the electronic scales found in Ogburn's truck and the narcotics investigator's testimony that all of the items found in Ogburn's truck and on his person indicated that the methamphetamine was intended for distribution.

Second, the fact that the State failed to test each of the individual bags of suspected methamphetamine does not render the State's evidence insufficient. When the State tests only one of several bags of suspected methamphetamine with positive results, its failure to test the remaining bags does not render them inadmissible. See *Edwards v. State*, 219 Ga. App. 239, 246 (7) (464 SE2d 851) (1995). Instead, the weight to be given such evidence is for the jury to determine. Id.

Based on all of the evidence submitted by the State, we find sufficient evidence supports Ogburn's conviction for possession of methamphetamine with intent to distribute. *Helton v. State*, 271 Ga. App. 272, 274-275 (b) (609 SE2d 200) (2005) (evidence sufficient to support intent to distribute conviction based upon division of drugs into individual packages, large amount of cash found on defendant, and expert testimony, even though every package was not tested by the State crime lab).

2. Ogburn contends that the trial court erred by denying his motion in limine to exclude photographs showing all of the evidence seized by the police at the time of his arrest. Ogburn asserts that he was prejudiced by the presence in these photographs of money seized from other co-defendants, the driver's license of one co-defendant, and a bag of suspected marijuana.

We need not determine whether the trial court erred by admitting these photographs into evidence because any error in their admission was harmless. See generally *Wilson v. State*, 194 Ga. App. 261, 262 (3) (390 SE2d 609) (1990). The jury heard testimony about

the other people arrested with Ogburn, the specific dollar amount seized from Ogburn, and that numerous bags of suspected methamphetamine were found on Ogburn's person. We conclude that it is highly probable that the inclusion of a driver's license, money, and a single bag of marijuana in the photograph did not contribute to the jury's decision to convict Ogburn of attempting to manufacture methamphetamine and possession of methamphetamine with intent to distribute. See generally *Davison v. State*, 241 Ga. App. 685, 688 (3) (527 SE2d 285) (1999).

3. Ogburn argues that the trial court's admission of the GBI crime lab report into evidence violated the continuing witness rule. We disagree. It is well established that the admission of a lab report does not violate the continuing witness rule. *Tanner v. State*, 259 Ga. App. 94, 97-98 (3) (576 SE2d 71) (2003); *Starks v. State*, 240 Ga. App. 346, 350 (4) (523 SE2d 397) (1999).

4. Ogburn contends he is entitled to a new trial because the trial court allowed the narcotics investigator to testify about the "ultimate question" over the objection of his trial counsel. According to Ogburn, the investigator "determined that not only was the Appellant guilty of attempting to manufacture methamphetamine, but was also involved in the sale or distribution of methamphetamine."

The record citations provided by Ogburn, however, do not support the claim that the investigator testified that he was "guilty" of the crimes of which he was accused. Instead, the investigator testified that, in his opinion and based upon his experience and training, the evidence found by the State indicated that it was going to be used for the manufacture or distribution of methamphetamine. This type of expert testimony does not invade the province of the jury or improperly express an opinion as to an ultimate fact. *Jenkins v. State*, 240 Ga. App. 102, 104-105 (2) (522 SE2d 678) (1999). As a result, we conclude that Ogburn is not entitled to a new trial.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED FEBRUARY 20, 2009.

*Jeffrey L. Grube*, for appellant.
*Kelly R. Burke, District Attorney, Joshua D. Morrison, Assistant District Attorney*, for appellee.