### A10A1750. DAVENPORT v. THE STATE.
### A10A1751. WALSH v. THE STATE.
(706 SE2d 757)

DILLARD, Judge.

Following a jury trial, co-defendants Mark Paul Davenport and William Gerald Walsh were convicted of possessing methamphetamine and an open container of alcoholic beverage in a motor vehicle. Davenport was also convicted of attempting to manufacture methamphetamine and three counts of possessing a firearm during the commission of a felony;[1] however, Walsh was found not guilty on those charges.[2] Because the charges against Davenport and Walsh arose from the same incident and set of facts, and because these two men were tried together, we have consolidated their separate appeals for review.

In Case No. A10A1750, Davenport appeals his convictions for attempt to manufacture methamphetamine, possession of methamphetamine, and possession of a firearm during the commission of a crime, contending that the evidence was insufficient to prove his guilt. Davenport also argues that he was denied effective assistance of counsel and that the trial court erred in denying his motions for directed verdict and a new trial on his claims.

In Case No. A10A1751, Walsh appeals his convictions for possession of methamphetamine and possession of an open container of

---

[1] Additionally, Davenport was found guilty of driving under the influence of methamphetamine and two counts of improper lane change, although he does not challenge those convictions on appeal.

[2] We note that any inconsistencies in the jury's verdicts between the co-defendants have no bearing on our review of the appellants' claims because the inconsistent-verdict rule has been abolished in Georgia. *See Parker v. Mooneyham*, 256 Ga. 334, 335 (349 SE2d 182) (1986) (holding that the principles applicable to inconsistent verdicts against one defendant are applicable to inconsistent verdicts between co-defendants), *overruled on other grounds by State v. Freeman*, 264 Ga. 276 (444 SE2d 80) (1994); *see also Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986) (adopting the reasoning of *United States v. Powell*, 469 U. S. 57 (105 SC 471, 83 LE2d 461) (1984), in abolishing the inconsistent-verdict rule in Georgia).

alcoholic beverage in a motor vehicle, contending that the evidence was insufficient to support his convictions, and further that the trial court improperly commented on the issue of venue and the sufficiency of the evidence for the open-container violation, requiring reversal.

Viewed in the light most favorable to the verdict,[3] the record shows that on the evening of May 23, 2008, a police officer observed a sport-utility vehicle (SUV) on I-75 making erratic lane changes, following too closely, and failing to signal. The officer then positioned his patrol car behind the SUV and activated his vehicle's emergency equipment. The SUV eventually maneuvered to the right side of the road, during which time the officer observed a good deal of movement in the back of the vehicle. This suspicious movement continued even after the vehicle came to a complete stop, prompting the officer to request backup assistance. Two additional officers responded to this request, and shortly thereafter, two officers approached the SUV, which contained Mark Paul Davenport, the driver; William Gerald Walsh, the front-seat passenger; and Edward Joseph Labretone,[4] the back-seat passenger.

The officers observed that Davenport and Walsh were slow to answer their questions and had diminished fine-motor skills, slurred speech, as well as constricted pupils. The officers then requested and received consent from all three passengers to a search of their persons after exiting the vehicle; and as one of the officers prepared to search Labretone, two glass pipes consistent with drug use fell from his pants. The officer conducting the search of Labretone then found a clear plastic bag of white powder (later determined to be methamphetamine), three smaller plastic bags of white powder, and a small bag of marijuana. All three suspects were handcuffed after the discovery of this contraband. And while the officer declined to conduct a field-sobriety test on Davenport, Davenport did consent to a blood test that confirmed he was indeed under the influence of methamphetamine and several prescription drugs. Labretone later testified at trial that all three suspects were smoking methamphetamine just prior to the police stop and that he hid the contraband in his pants at Walsh's request. An officer also testified that Labretone referred to Davenport and Walsh as "big time meth cookers."

Once the suspects were secure, the officers searched the vehicle,

---

[3] When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. *See, e.g., English v. State,* 301 Ga. App. 842, 842 (689 SE2d 130) (2010); *Lott v. State,* 303 Ga. App. 775, 775 (1) (694 SE2d 698) (2010).

[4] Labretone originally faced the same charges as Walsh, but he testified for the State at trial and agreed to plead guilty to a charge of possession of methamphetamine.

which was owned by Davenport. The search produced the following items: two handguns, one of which was loaded and placed under the driver's seat; a .22 caliber rifle with scope protruding from under the back seat; several knives, daggers, and machetes in the front seat; several cans of beer (some of which were open); one packet of antihistamine pills; a large pickle jar containing a Ziploc bag filled with a thick, clear liquid; and a suitcase containing two cans of kerosene, 100 to 200 double-A batteries, and small tubing of different lengths. Consistent with his training, one of the officers recognized the materials contained in the suitcase as being hazardous and regularly linked to the production of methamphetamine. Based on this recognition, the officer was instructed to secure the area and discontinue the search, which would later be completed by a specially trained narcotics unit.

At trial, the State presented expert testimony from a narcotics officer trained in investigating clandestine methamphetamine labs. This officer testified that when he and the other narcotics officers searched Davenport's SUV for chemicals, they found the following items (all of which are consistent with the manufacture of methamphetamine): a pack of antihistamine pills; a gallon of drain cleaner; the pickle jar (containing an unidentified acid); two bottles of brake fluid; two bottles of starter fluid; two bottles of salt; two gallons of Coleman fuel; Ziploc bags; coffee filters; plastic jugs; bulk lithium batteries; rubber tubing; and two propane bottles. The officer also testified that while the items found in Davenport's SUV were identified as components of a clandestine methamphetamine lab in shipment, a single pack of antihistamine pills would only produce a small amount of methamphetamine. Finally, the officer testified that the only missing ingredient from the materials found in Davenport's vehicle was anhydrous ammonia, a controlled farm fertilizer. After the close of evidence, Davenport and Walsh were found guilty of the charges enumerated supra. These appeals follow.

1. We first address Davenport and Walsh's claims that the evidence was insufficient to support their convictions. Discerning no error by the trial court, we affirm their respective convictions for the reasons set forth infra, and we hold that the trial court did not err in denying Davenport and Walsh's motions for directed verdict or new trial.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[5] We do not weigh the evidence or determine witness credibility "but only determine

---

[5] *See, e.g., English*, 301 Ga. App. at 842; *Lott*, 303 Ga. App. at 775 (1).

whether a rational trier of fact could have found the defendants guilty of the charged offenses beyond a reasonable doubt."[6] Accordingly, the jury's verdict will be upheld "[a]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[7] Additionally, "the standard of review for denial of a motion for directed verdict is the same as that for determining the sufficiency of the evidence to support a conviction."[8] With these guiding principles in mind, we will now address each of Davenport and Walsh's respective enumerations of error.

(a) *Attempt to Manufacture Methamphetamine.* In Case No. A10A1750, Davenport contends that the evidence was insufficient to support his conviction for attempt to manufacture methamphetamine. Specifically, Davenport argues that the evidence was insufficient to support a finding that he took a substantial step toward committing the crime of manufacturing methamphetamine because (1) the officers did not locate all of the items necessary for the production of methamphetamine, (2) the items present each had a legal use, and (3) a single pack of antihistamine pills would only produce a small amount of methamphetamine. We disagree.

An individual commits the offense of attempt when, "with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."[9] The act "must be more than mere preparation," but it "can not accurately be said that no preparations can amount to an attempt."[10] The question, then, is one of degree, depending "upon the circumstances of each case."[11] This analytical framework properly shifts the focus from what the criminal defendant has *not* done to what he *has* already done,[12] and it recognizes that a finding that substantial steps have already been taken by an individual toward the commission of a crime is in no way precluded by the fact that there remain additional steps to be taken before the crime can be completed.[13] Additionally, while the act must *generally* be inexplicable as a lawful

---

[6] *Lott*, 303 Ga. App. at 776 (citing *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979)); *see also English*, 301 Ga. App. at 842.

[7] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted) (quoting *Peek v. State*, 247 Ga. App. 364, 365 (1) (542 SE2d 517) (2000)).

[8] *Lott*, 303 Ga. App. at 776 (punctuation omitted) (quoting *Terry v. State*, 293 Ga. App. 455, 455 (667 SE2d 109) (2008)).

[9] OCGA § 16-4-1.

[10] *English*, 301 Ga. App. at 843 (punctuation omitted) (quoting *Dennard v. State*, 243 Ga. App. 868, 871 (1) (a) (534 SE2d 182) (2000)).

[11] *Id.* (punctuation omitted) (quoting *Dennard*, 243 Ga. App. at 871 (1) (a)).

[12] *Id.*; *Smith v. State*, 189 Ga. App. 27, 29 (1) (375 SE2d 69) (1988).

[13] *English*, 301 Ga. App. at 843; *Smith*, 189 Ga. App. at 30 (1).

act, this requires only that "the act, in light of previous acts, constitutes a substantial step toward the commission of a crime," not that the act itself be unlawful.[14]

Here, Davenport was charged with and found guilty of attempting to manufacture methamphetamine by "transporting the chemicals, tools and supplies to manufacture the methamphetamine." And the evidence presented at his trial showed that Davenport's SUV contained most of the ingredients and components necessary for the clandestine manufacture of methamphetamine (some of which were in rather large quantities). Moreover, the State presented expert testimony that these items, when used together, indicate that methamphetamine is being produced. Further, the officers located methamphetamine in the vehicle, and Labretone told an officer that Davenport was a "big time meth cooker." Finally, Davenport was found to have methamphetamine in his system. And while it is certainly true that "much of the evidence consisted of common household items," these items in combination unquestionably "presented evidence of the [attempted] manufacture of methamphetamine."[15]

It is, of course, impossible for this Court to announce a bright-line rule or definitive checklist of the ingredients, components, and amounts that must be present to warrant a finding that substantial steps have been taken toward the manufacture of methamphetamine. Such determinations will and must be made on a case-by-case basis.[16] And here, the jury was presented with sufficient evidence to infer that Davenport had taken a substantial step toward the manufacture of methamphetamine by transporting most of the chemicals, tools, and supplies necessary to commit that crime.

(b) *Possession of Methamphetamine.* In both Case Nos. A10A1750 and A10A1751, Davenport and Walsh contend that there was insufficient evidence to support their convictions for possession

---

[14] *Dennard*, 243 Ga. App. at 871-72 (1) (a).

[15] *Miller v. State*, 298 Ga. App. 792, 793 (1) (681 SE2d 225) (2009).

[16] *See Ogburn v. State*, 296 Ga. App. 254, 254-55 (674 SE2d 101) (2009) (affirming conviction for attempted manufacture of methamphetamine based on, *inter alia*, discovery of fourteen bags of methamphetamine, ten cans of starter fluid, and 1,080 pseudoephedrine pills); *Kohlmeier v. State*, 289 Ga. App. 709, 711 (658 SE2d 261) (2008) (affirming conviction for attempted manufacture of methamphetamine based on, *inter alia*, discovery of a box of pseudoephedrine, two bottles of Heet fuel treatment, a Coleman stove, a can of kerosene, and a bulk of matches with red phosphorous); *Womble v. State*, 290 Ga. App. 768, 768-71 (660 SE2d 848) (2008) (affirming conviction for attempted manufacture of methamphetamine based on discovery of methamphetamine oil, iodine crystals, used coffee filters, and hypodermic needle); *see also Edwards v. State*, 306 Ga. App. 713, 714-15 (703 SE2d 130) (2010); *Miller*, 298 Ga. App. at 793; *Boone v. State*, 293 Ga. App. 654, 654-57 (667 SE2d 880) (2008); *Wesson v. State*, 279 Ga. App. 428, 429-30 (1) (631 SE2d 451) (2006); *Murrell v. State*, 273 Ga. App. 735, 735-37 (1) (615 SE2d 780) (2005); *Bilow v. State*, 262 Ga. App. 850, 851-52 (586 SE2d 675) (2003); *Query v. State*, 217 Ga. App. 61, 61-63 (456 SE2d 704) (1995).

of methamphetamine. Specifically, Davenport argues that others had equal access to the methamphetamine and that the testimony of Labretone, an accomplice, was uncorroborated. Walsh similarly argues that his conviction was based solely upon the uncorroborated testimony given by Labretone. We find both arguments unavailing.

In Georgia, "it is unlawful for any person to . . . possess . . . any controlled substance[,]"[17] and possession of controlled substances may be actual or constructive.[18] Additionally, when a person not in actual possession of a controlled substance knowingly has the power and intention at a given time to exercise control or dominion over the contraband, he or she has constructive possession of same.[19] A finding of constructive possession, then, must be based on a connection between the defendant and the object that is more than spatial proximity.[20] And when constructive possession is established wholly on circumstantial evidence, "the law requires that the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[21] Finally, to warrant a conviction on such evidence, "the proved facts need exclude only *reasonable* hypotheses—not bare possibilities that the crime could have been committed by someone else."[22] Questions of reasonableness in this regard "are generally decided by the jury."[23] In sum, so long as there is slight evidence of access, power, and intention to exercise dominion or control over the contraband, the question of fact as to constructive possession remains with the jury.[24]

And here, the evidence was sufficient to support both Davenport and Walsh's convictions for possession of methamphetamine. First, Labretone testified that all three defendants were smoking methamphetamine inside the SUV prior to the police stop and had been doing so for approximately 30 minutes. Labretone also testified that he hid contraband—including a substance that tested positive for meth-

---

[17] OCGA § 16-13-30 (a).

[18] *Prather v. State*, 293 Ga. App. 312, 313 (1) (667 SE2d 113) (2008); *Singleton v. State*, 194 Ga. App. 5, 5 (389 SE2d 496) (1989).

[19] *Prather*, 293 Ga. App. at 313 (1); *Singleton*, 194 Ga. App. at 5-6.

[20] *Prather*, 293 Ga. App. at 313 (1); *In the Interest of M. J. H.*, 193 Ga. App. 621, 623 (1) (388 SE2d 738) (1989).

[21] *Prather*, 293 Ga. App. at 313 (1) (punctuation omitted) (quoting *Hodges v. State*, 277 Ga. App. 174 (626 SE2d 133) (2006)).

[22] *Id.* (punctuation omitted) (quoting *Jackson v. State*, 284 Ga. App. 619, 620 (1) (644 SE2d 491) (2007)); *see also In the Interest of M. J. H.*, 193 Ga. App. at 623 (1). The word "hypothesis" refers "to such reasonable inferences as are ordinarily drawn by ordinary men in the light of their experience in everyday life." *Prather*, 293 Ga. App. at 313 (1) (punctuation omitted) (quoting *Smith v. State*, 197 Ga. App. 609, 611 (398 SE2d 858) (1990)).

[23] *Prather*, 293 Ga. App. at 313 (1) (punctuation omitted).

[24] *Id.*

amphetamine and the methamphetamine pipe that the defendants used — in his underwear at Walsh's "request" because he was, rather misguidedly, "trying to do a good deed."

More importantly, Labretone's testimony was not uncorroborated as Davenport and Walsh claim.[25] Rather, one of the investigating officers testified that he noticed a good deal of movement inside the vehicle after activating his emergency equipment and that such movement was consistent with the concealment of contraband. Additionally, the officer suspected that the vehicle's occupants were under the influence of narcotics after observing that Davenport and Walsh were slow to answer questions and that they had diminished fine-motor skills, slurred speech, and constricted pupils. Indeed, Davenport's blood tested positive for methamphetamine use.[26] Thus, Labretone's testimony was corroborated as to both Davenport and Walsh's possession of methamphetamine.

Furthermore, while Davenport is correct that

[t]he equal access rule entitles a defendant to acquittal where (1) the sole evidence of his possession of contraband is his possession of a vehicle in which the contraband is found and (2) others had equal access to the part of the vehicle where the contraband was found . . . [,][27]

the rule is inapplicable when "all persons allegedly having equal access to the contraband are alleged to have been in joint constructive possession of (the) contraband."[28] And here, as detailed supra,

---

[25] *See* OCGA § 24-4-8. In felony cases "where the only witness is an accomplice, the testimony of a single witness is not sufficient" to establish a fact. *Id.* However, "corroborating circumstances may dispense with the necessity for the testimony of a second witness. . . ." *Id.*; *see also Parkerson v. State*, 265 Ga. 438, 439 (2) (457 SE2d 667) (1995) (stating that even slight evidence of corroboration is enough, and this evidence may be circumstantial, including a defendant's conduct before and after a crime).

[26] There is no indication that Walsh was subjected to a blood test, but the record suggests that Davenport was tested because he was suspected of driving under the influence.

[27] *Respress v. State*, 267 Ga. App. 654, 655 (1) (600 SE2d 727) (2004) (citation and punctuation omitted). "The [equal-access] rule functions as a defense available to the accused to whom a presumption of possession flows by reason of his ownership or control of the premises where contraband was found." *Daugherty v. State*, 283 Ga. App. 664, 668 (3) (642 SE2d 345) (2007). *See generally Farmer v. State*, 152 Ga. App. 792, 794-97 (264 SE2d 235) (1979) (providing in-depth explanation for proper application of the equal-access rule to rebut presumption of possession).

[28] *Ramirez v. State*, 290 Ga. App. 3, 4-5 (1) (658 SE2d 790) (2008) ("[When] the driver and passengers are charged with joint constructive possession of contraband found in the vehicle, the state may rely on the presumption to show that the driver exercised possession and control over the contraband, but the driver is not entitled to rely on the equal access rule to rebut the presumption."); *see also Davis v. State*, 270 Ga. App. 777, 779 (1) (607 SE2d 924) (2004) ("[T]he equal access rule, conceptually and historically, has no application where, as here, all persons allegedly having equal access to the contraband are alleged to have been in joint

the evidence of Davenport's alleged possession was not limited to his ownership of the SUV. Additionally, all of the defendants were charged with jointly possessing methamphetamine. Thus, the evidence was sufficient for the jury to find Davenport and Walsh guilty of joint constructive possession of methamphetamine.

(c) *Possession of a Firearm During the Commission of a Crime.* In Case No. A10A1750, Davenport also contends that the evidence was insufficient to support his conviction for the possession of a firearm during the commission of a crime. We disagree.

It is a crime for a person to "have on or within arm's reach of his or her person a firearm" during the commission of or attempt to commit a crime involving the felony possession of or manufacture of a controlled substance.[29] And in the case sub judice, each defendant was charged with three counts of having a firearm "within arm's reach of his person," with the underlying crimes being the possession of methamphetamine and the attempt to manufacture methamphetamine. Because we have held that sufficient evidence existed to convict Davenport of possession of methamphetamine and the attempt to manufacture methamphetamine, his contention that "the evidence is insufficient to support . . . the underlying felonies" is without merit.

As to Davenport's argument that there is insufficient evidence to prove possession of the firearm, this too is without merit. The "possession" specifically proscribed by OCGA § 16-11-106 (b) is the act of having "on *or within arm's reach* of [one's] person a firearm. . . ."[30] The phrase "within arm's reach" eliminated "the narrow judicial reading given the provision formerly."[31] Indeed, "[b]y adding the words 'within arm's reach,' the legislature *extended* the application of the statute to include weapons to which a felon had immediate access in addition to those weapons the felon actually had on his

---

constructive possession of that contraband." (citation and punctuation omitted)).

[29] OCGA § 16-11-106 (b) (4).

[30] OCGA § 16-11-106 (b) (emphasis supplied). *Cf. White v. State*, 203 Ga. App. 889, 891 (3) (418 SE2d 149) (1992) (stating that the type of possession is specifically proscribed with reference to the possession of a knife during the commission of certain crimes).

[31] *Singleton*, 194 Ga. App. at 6. Before 1987, the statute

provided that someone charged under this Code section had to "have on his person a firearm or knife . . . during the commission of, or the attempt to commit," a felony. In 1987, however, the statute was amended "so as to clarify that such firearm or knife must be on or within arm's reach of the person."

*Carswell v. State*, 251 Ga. App. 733, 735 (1) (b) (555 SE2d 124) (2001) (omission in original) (footnotes omitted). *See generally McIntosh v. State*, 185 Ga. App. 612, 615 (5) (365 SE2d 454) (1988) (reversing conviction when defendant had firearm within arm's reach but not on his person, and defendant committed crime prior to the effective date of the amendment adding the "within arm's reach" language to statute); *Beal v. State*, 175 Ga. App. 234, 238-39 (4) (333 SE2d 103) (1985) (reversing conviction when there was no evidence that firearm found near defendant was on defendant's person during commission of the crime).

person."[32] And when a defendant is charged under this statute, the evidence is sufficient to sustain a conviction when it is shown at trial that a firearm was within arm's reach of the defendant at any point during the commission of the crime,[33] thus giving the defendant *immediate* access to the weapon.[34] The jury may make such an inference from both circumstantial and direct evidence.[35]

In this matter, the search of Davenport's SUV produced two handguns halfway under Davenport's seat in a partially unzipped case and a .22 caliber rifle with a scope protruding from under the back seat. Moreover, the jury had an opportunity to observe Davenport throughout the trial, "and they were authorized to determine from their observation whether the [weapons were] within his arm's reach."[36] Thus, the jury was presented with sufficient evidence to find that Davenport was within arm's reach of the three firearms during the commission of the crimes in question, such that he was in possession of them within the meaning of OCGA § 16-11-106 (b).[37]

In reaching this conclusion, we pause to note that there appears

---

[32] *Carswell*, 251 Ga. App. at 735 (1) (b) (emphasis supplied).

[33] *See Curry v. State*, 238 Ga. App. 511, 522 (5) (c) (519 SE2d 269) (1999); *see also Humphreys v. State*, 253 Ga. App. 344, 346 (559 SE2d 99) (2002) (noting that final element of the crime "require[s] proof only that [the defendant] was even momentarily within arm's reach of the gun" (citation and punctuation omitted)); *Gibson v. State*, 223 Ga. App. 103, 103 (1) (476 SE2d 863) (1996) (same).

[34] *See Clyde v. State*, 298 Ga. App. 283, 285-86 (2) (680 SE2d 146) (2009) ("[The defendant's] conviction cannot be sustained unless there was evidence that he had immediate access to the weapon. . . ."); *Carswell*, 251 Ga. App. at 736 ("[I]mmediate access to the weapon . . . is required to sustain a conviction under OCGA § 16-11-106 (b).").

[35] *Compare Carswell*, 251 Ga. App. at 735-36 (1) (b) (holding that circumstantial evidence was insufficient to sustain conviction when firearm was inside a zippered compartment of a suitcase, "which could have been zipped the entire time [the defendant] was in possession of . . . cocaine") *with Gibson*, 223 Ga. App. at 103 (1) (holding that jury could "consider the evidence concerning the small size and crowded conditions within the residence and infer that it was inevitable" that defendant passed even momentarily within arm's reach of a firearm hidden under a couch that was positioned behind a coffee table containing cocaine).

[36] *Copeland v. State*, 228 Ga. App. 734, 736 (1) (492 SE2d 723) (1997), *declined to follow on other grounds*, *Weems v. State*, 269 Ga. 577, 579 (2) & n.2 (501 SE2d 806) (1998). *Cf. Ferguson v. State*, 307 Ga. App. 232, 233 (1) (704 SE2d 470) (2010) (holding, *inter alia*, that a jury may consider a defendant's appearance at trial in conjunction with the evidence submitted at trial in order to resolve conflicts in the testimony presented).

[37] *See Martinez v. State*, 303 Ga. App. 166, 168 (692 SE2d 766) (2010) (affirming conviction when "[t]he handgun was in arm's reach of where [the defendant] had been sitting in the passenger seat"); *Hall v. State*, 283 Ga. App. 266, 266-68 (641 SE2d 264) (2007) (affirming conviction when firearms were found within arm's reach of drugs); *Carter v. State*, 248 Ga. App. 821, 822 (1) (b) (547 SE2d 613) (2001) (stating that "evidence that the revolver was found under the floor mat where [the defendant] was sitting authorized the trier of fact to find him guilty" of violating OCGA § 16-11-106 (b) by having a firearm within arm's reach); *Smith v. State*, 214 Ga. App. 631, 633 (4) (448 SE2d 906) (1994) (affirming conviction when firearm in truck's rear window was within arm's reach of defendant during commission of sexual assault). *Compare Williams v. State*, 279 Ga. App. 83, 85 (2) (630 SE2d 601) (2006) (reversing conviction because gun's location within arm's reach could only be established by hearsay testimony).

to be considerable confusion surrounding the evidence necessary to sustain a conviction for violating OCGA § 16-11-106 (b). This confusion appears to have been caused, in part, by imprecise language employed by this Court in many of our prior opinions (or the lack of any discussion whatsoever in those decisions of the relevant statutory language),[38] and is further borne out by the arguments presented in the case sub judice by both Davenport and the State. Indeed, Davenport and the State largely strayed from addressing the relevant question of whether the evidence supported a finding that the firearms were within arm's reach of Davenport during the commission of the crimes at issue. Davenport cites *In the Interest of*

---

[38] Some of our prior cases make no mention of the "within arm's reach" component of the statute. *See Boone*, 293 Ga. App. at 654-57 (upholding conviction without addressing whether evidence was sufficient to find that defendant was within arm's reach of firearm while committing underlying crimes); *Howard v. State*, 291 Ga. App. 289, 289-91 (1) (661 SE2d 644) (2008) (same); *Lopez v. State*, 259 Ga. App. 720, 721-22 (1) (578 SE2d 304) (2003) (upholding conviction when passenger in car was "in joint constructive possession" because he was "in a position to see the pistol . . . [in] the glove box"); *Taylor v. State*, 263 Ga. App. 420, 420-22 (1) (587 SE2d 791) (2003) (upholding conviction for pistol found under driver's seat but without analysis of the "within arm's reach" component). Others appear to muddle the evidence necessary to find "possession" under OCGA § 16-11-106 (b) with that sufficient to sustain a conviction for possessing drugs or for possessing a weapon in other contexts. *See Daugherty*, 283 Ga. App. at 667-68 (1) (b) (upholding conviction for possession of firearm while committing felony *and* for possession of firearm by a convicted felon but only applying the constructive-possession standard that is sufficient to support the latter type of criminal possession); *Allen v. State*, 286 Ga. App. 469, 470 (1) (649 SE2d 583) (2007) (upholding conviction under OCGA § 16-11-106 (b) by applying the standard of joint constructive possession that is applicable to other contraband); *Humphreys*, 253 Ga. App. at 345-46 (upholding conviction under OCGA § 16-11-106 (b) with mention of "within arm's reach" component as the "final element" of crime, but first stating that "possession of the firearm was established by [defendant's] dominion over his vehicle"); *Brown v. State*, 244 Ga. App. 440, 442 (2) (535 SE2d 785) (2000) (upholding conviction by applying joint constructive possession standard). Still others appear to sustain convictions for OCGA § 16-11-106 (b) under OCGA § 16-2-20 (which provides that a "person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime"), but these cases directly cite only OCGA § 16-11-106 (b) and curiously make no *direct* mention of OCGA § 16-2-20. *See Lopez*, 259 Ga. App. at 721-22 (mentioning co-defendant's access to weapon); *Cassie v. State*, 192 Ga. App. 484, 484-86 (4) (385 SE2d 129) (1989) (upholding conviction under OCGA § 16-11-106 (b) against defendant "as a party to the acts of co-defendant" when co-defendant carried a handgun on his person). *But see Driscoll v. State*, 295 Ga. App. 5, 8 (1) (b) (670 SE2d 824) (2008) ("[B]ecause Whaley was also within arm's reach of two handguns during the commission of the felony drug offenses, Driscoll is guilty of Whaley's handgun possession offenses as a party to the crime." (citing OCGA § 16-2-20)); *Victrum v. State*, 203 Ga. App. 377, 379-80 (3) (416 SE2d 740) (1992) ("Defendant's co-defendant was within arm's length of two pistols during the commission of the crime; therefore, defendant is guilty of the offense as a party to the crime." (citing OCGA § 16-2-20)). Our own Supreme Court has even been less than precise on this particular point. *See Hill v. State*, 276 Ga. 220, 221 (3) (576 SE2d 886) (2003) (holding that "[e]vidence that the defendant *or an accomplice* either carried or was within arm's length of a weapon during the commission of a crime authorizes a finding of guilt of violating OCGA § 16-11-106 (b)," but in doing so citing to *Tesfaye v. State*, 275 Ga. 439, 440 (1) (569 SE2d 849) (2002) and *Victrum*, 203 Ga. App. at 379 (3), both of which *explicitly* relied upon OCGA § 16-2-20 in upholding the convictions of accomplices (emphasis supplied)).

*M. J. H.*[39] in arguing that the State did not prove actual or constructive possession of a firearm, but that case dealt with a lack of proof of actual or constructive possession of the contraband prohibited by the underlying crime.[40] Specifically, the State in *M. J. H.* failed to prove that the defendant had joint constructive possession of drugs, and thus, the Court had no need to analyze whether the defendant possessed a firearm during the commission of the underlying crime.[41] In response, the State quotes OCGA § 16-11-106 (b) but then argues that "[a]s with possession of methamphetamine, possession of a firearm during the commission of a crime can be either actual or constructive[,]" citing only *Cabrera v. State*,[42] *Williams v. State*,[43] and *Respress v. State*.[44] However, these cases concern constructive possession and the equal-access rule in the context of *drug* possession, not the possession of a firearm during the commission of a crime.[45] And while the State did note that the firearms were within arm's reach of Davenport during the commission of the crimes in question, the case law relied upon by the State was entirely misplaced.

Given this apparent confusion, we reiterate that "possession" of a weapon for purposes of OCGA § 16-11-106 (b) is specifically delineated in the statute: The evidence must show that while committing or attempting to commit one of the specified crimes, one or more of the specified weapons was either on the defendant's person or within arm's reach of his person.[46] The inclusion of "within arm's reach" in OCGA § 16-11-106 (b) defines constructive possession for purposes of this statute and makes the proof of possession for purposes of the statute narrower than the proof sufficient to establish constructive possession of contraband or weapons in other contexts.[47] And to the extent that any of our prior opinions can

---

[39] 193 Ga. App. 621 (388 SE2d 738) (1989).

[40] *See id.* at 623-24.

[41] *See id.*

[42] 303 Ga. App. 646, 651 (1) (694 SE2d 720) (2010).

[43] 303 Ga. App. 222, 225 (2) (692 SE2d 820) (2010).

[44] 267 Ga. App. 654, 654 (1) (600 SE2d 727) (2004).

[45] *See Cabrera*, 303 Ga. App. at 651-52 (1) (discussing the equal-access rule and constructive possession of methamphetamine found in a vehicle); *Williams*, 303 Ga. App. at 224-26 (2) (discussing the equal-access rule and constructive possession of marijuana found in a house); *Respress*, 267 Ga. App. at 654-55 (1) (discussing the equal-access rule and constructive possession of cocaine found in a vehicle).

[46] *See* OCGA § 16-11-106 (b).

[47] *See, e.g.*, OCGA § 16-11-131 (b) (making it unlawful for convicted felons to receive, possess, or transport firearms); OCGA § 16-11-132 (b) ("[I]t shall be unlawful for any person under the age of 18 years to possess or have under such person's control a handgun."); OCGA § 16-13-30 (a) (making it unlawful to "purchase, possess, or have under . . . control any controlled substance"). *See generally In the Interest of C. M.*, 290 Ga. App. 788, 791-92 (2) (661 SE2d 598) (2008) (analyzing traditional constructive possession in sustaining conviction for possession of a firearm by a person under 18); *Simpson v. State*, 213 Ga. App. 143, 145 (3) (444

possibly be read as suggesting otherwise,[48] those decisions are of no precedential utility in construing and applying the plain meaning of OCGA § 16-11-106 (b).

(d) *Possession of Open Container of Alcoholic Beverage.* In Case No. A10A1751, Walsh contends that there was insufficient evidence to support his conviction for possessing an open container of alcoholic beverage in a motor vehicle. According to Walsh, the State failed to prove that he either consumed alcohol in the SUV or that he possessed the alcohol found in the SUV.

A person violates OCGA § 40-6-253 (b) by either consuming an alcoholic beverage or by possessing an open alcoholic-beverage container in the passenger area of a vehicle on a roadway or shoulder of a public highway.[49] "Passenger area" is defined as "the area designed to seat the driver and passengers while a motor vehicle is in operation and any area that is readily accessible to the driver or a passenger while in his or her seating position."[50] Specifically excluded from the definition of "passenger area" are locked glove compartments and, in vehicles that do not have trunks, the area behind the rearmost upright seat.[51] "Open alcoholic beverage container" is defined as any bottle, can, or other receptacle that contains any amount of alcoholic beverage and has an open or broken seal *or* has had its contents partially removed.[52]

Here, the defendants were charged with "knowingly possess-[ing] an open alcoholic beverage container in the passenger area of a motor vehicle on the roadway of a public highway." Davenport's SUV had front-bucket seats, a rear-bench seat, and a cargo area. When officers initially searched the SUV, one discovered a cooler in the back seat that contained empty cans of beer and one or two half-consumed cans. The officer admitted that he could not tell who drank the open cans of beer or when they were consumed, and there were no field-sobriety tests conducted at the scene out of fear for the safety of the vehicle's occupants and the officers. However, both Davenport and Walsh were observed as having slurred speech and

---

[48] SE2d 115) (1994) (analyzing traditional constructive possession and stating that this type of possession is sufficient to sustain conviction for possession of a firearm by a felon); *Cantrell v. State*, 204 Ga. App. 330, 331-32 (419 SE2d 141) (1992) (analyzing traditional constructive possession in sustaining conviction for possession of firearm by a felon and possession of cocaine) *See supra* note 38.

[49] OCGA § 40-6-253 (b) (1).

[50] OCGA § 40-6-253 (a) (3).

[51] *Id.*

[52] OCGA § 40-6-253 (a) (2); *see Kalb v. State*, 276 Ga. App. 394, 395 (1) (623 SE2d 230) (2005) (sufficient evidence for conviction when empty bottle of beer found in car but occupant admitted to drinking beer while driving); *Yates v. State*, 263 Ga. App. 29, 30 (1) (587 SE2d 180) (2003) (sufficient evidence for conviction when officer testified to finding "open bottle of beer" on front seat).

diminished fine-motor skills, and as being slow to respond to questions.

As previously stated, on a challenge to the sufficiency of the evidence, we do not determine the credibility of witnesses or weigh evidence; this is within the province of the jury.[53] Our sole consideration on appeal is whether a rational trier of fact could have found Walsh guilty of violating Georgia's open-container law beyond a reasonable doubt. And because there is some competent evidence—though it may be contradicted—to support a finding that Walsh committed the charged offense, we will not overturn the jury's verdict.[54] In sum, by showing circumstantially that each of the defendants (including Walsh) had equal access to the cooler in the back seat, the State was able to support its theory that all of the defendants were guilty of joint constructive possession of the open containers.[55]

2. *Ineffective Assistance of Counsel.* In Case No. A10A1750, Davenport claims he received ineffective assistance of counsel in that his attorney at trial (1) failed to adequately investigate the case; (2) failed to interview a witness; (3) failed to object to expert qualification to identify clandestine methamphetamine labs; (4) failed to object to testimony regarding the effect of a combination of drugs on driving ability and to expert testimony on the effect of drug use on driving ability; (5) failed to object to hearsay, as well as speculative and irrelevant testimony; and (6) failed to preserve unspecified issues for appeal.

To prevail on his claim of ineffective assistance of counsel, Davenport "must show that counsel's performance was deficient and that the deficient performance so prejudiced [him] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[56] There is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[57] And unless clearly erroneous, we will uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel.[58] A trial court's legal conclusions in this

---

[53] *See Lott*, 303 Ga. App. at 776 (citing *Jackson*, 443 U. S. at 319 (III) (B)); *see also English*, 301 Ga. App. at 842.

[54] *See Miller*, 273 Ga. at 831.

[55] *See Warren v. State*, 254 Ga. App. 52, 53-54 (1) (561 SE2d 190) (2002); *Castillo v. State*, 166 Ga. App. 817, 822 (2) (305 SE2d 629) (1983).

[56] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984).

[57] *Chapman*, 273 Ga. at 350 (2).

[58] *Id.*; *Henderson v. State*, 303 Ga. App. 898, 898 (1) (695 SE2d 334) (2010).

regard, however, are reviewed de novo.[59] With these principles in mind, we will address each of Davenport's claims in turn.

(a) *Adequacy of Investigation.* Davenport contends that his trial counsel conducted an inadequate investigation of his case. To prepare for Davenport's defense, his trial counsel testified that he filed the standard discovery, interviewed all the police officers, interviewed Davenport, spoke to counsel for Walsh and Labretone, examined all police and medical-lab reports, and observed the SUV in person. According to defense counsel, he also obtained "extensive discovery and . . . was happy with the magnanimity of the State by giving [him] a lot of discovery and very good notes." When questioned as to why he did not hire his own investigator, defense counsel testified that he received more information from the State than in other cases, that the information was "very, very complete" and "replete . . . with everything that [he] thought [he] needed to go forward[,]" and it was more than he actually wanted.

Given the foregoing, we find that Davenport has failed to establish that his trial counsel conducted an inadequate investigation into his case. In evaluating claims of ineffective assistance of counsel, "[t]he test has nothing to do with what the best lawyers would have done" or "what most good lawyers would have done," but "only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted."[60] There is, then, no magic amount of time that must be spent preparing for trial to provide a client with an adequate investigation.[61] And in the case sub judice, Davenport has failed to demonstrate that his trial counsel performed deficiently in conducting an adequate investigation of his case.

(b) *Exploration of Witnesses.* Davenport also contends that his trial counsel was ineffective in failing to investigate Angie Delafaye as a potential defense witness. In this respect, defense counsel testified below that he and Delafaye, a friend of Davenport's, "had kind of an on-going conversation" and that she was "very religious" about calling him multiple times each week, staying in "constant contact." Both Davenport and Delafaye observed the SUV with trial counsel, and both were included in a discussion about the strategy of the case, which was the theory that the items in the SUV were for a camping trip in Tennessee. And while there was some suggestion by

[59] *Henderson*, 303 Ga. App. at 898 (1).

[60] *Bridges v. State*, 286 Ga. 535, 537 (1) (690 SE2d 136) (2010) (citation and punctuation omitted).

[61] *See Benefield v. State*, 231 Ga. App. 80, 81 (497 SE2d 650) (1998) (stating further that "[e]ach case must be judged upon its own circumstances and in light of its own degree of complexity").

appellate counsel that Delafaye could have testified to being with Davenport the day before the arrest, trial counsel testified that he doubted Delafaye "would have been very fruitful as a witness[,]" that she "was very emotionally involved[,]" and that he "could not see any benefit . . . to [putting] her on the witness stand" because she had not been in the SUV during the incident. As such, trial counsel admitted that he did not explore Delafaye as a witness because of her emotional involvement and high-strung nature.

Suffice it to say, the determination as to which defense witnesses will be called is purely a matter of trial strategy and tactics, and "[t]rial strategy and tactics do not equate with ineffective assistance of counsel."[62] And while trial counsel may not have formally investigated Delafaye, his communication with her was considerable, and he determined that she would not be a favorable witness for Davenport. As such, trial counsel's decision not to further explore Delafaye as a defense witness clearly falls within the realm of trial strategy and tactics and did not render his assistance ineffective.[63]

(c) *Expert Qualification in Clandestine Labs.* Davenport further argues that his trial counsel was ineffective in failing to object to "the qualification of law enforcement officers to testify as experts in the identification of clandestine labs or methamphetamine labs." Specifically, Davenport claims that his trial counsel admitted that he did not research the "requisite qualifications for an expert in clandestine labs and what such testimony should entail." Davenport fails, however, to offer any evidence or argument as to how the officers' qualifications were inadequate.

In order to qualify as an expert, "generally all that is required is that a person be knowledgeable in a particular matter," and "his special knowledge may be derived from experience as well as study, and formal education in the subject is not a requisite for expert status."[64] Here, trial counsel *did* object to testimony by the officer who identified chemicals found in the SUV as being consistent with the production of methamphetamine, after which the prosecution elicited testimony that the officer, in addition to his academy training in hazardous materials, had attended a 40-hour drug-identification course to identify narcotics and the hazardous materials used to produce narcotics. The officer also testified that the items found in the SUV were consistent with what he had seen through experience

---

[62] *Henderson*, 303 Ga. App. at 901 (1) (c) (citation and punctuation omitted).

[63] *See Keanum v. State*, 212 Ga. App. 662, 663-64 (3) (442 SE2d 790) (1994) (stating further that "[e]rrors in judgment and tactical errors do not constitute denial of effective assistance of counsel").

[64] *Murrell*, 273 Ga. App. at 739 (3) (citation and punctuation omitted) (noting, too, that expert qualification is within the sound discretion of the trial court).

and training as being used to manufacture methamphetamine.

As to the member of the narcotics unit, he testified to having basic narcotics training in identifying methamphetamine, crime-lab training, training with the DEA's Clandestine Lab School, and local clandestine lab training, and to investigating approximately ten to fifteen clandestine methamphetamine lab scenes. While trial counsel was given an opportunity to conduct voir dire of this witness prior to him being admitted as an expert, counsel testified that he probably would not have objected to this officer being qualified as an expert in clandestine labs "for fear that [the prosecutor] would get up and further bolster this witness and make it even worse." Given the foregoing, trial counsel's conduct in this regard was not unreasonable and did not rise to the level of ineffective assistance of counsel. Specifically, trial counsel's decisions not to object further or object in the first instance to the qualifications of these experts were strategic decisions that we will not second-guess on appeal.[65]

(d) *The Effect of Drugs on Driving Ability.* Davenport also maintains that his trial counsel's failure to object to expert testimony regarding the combination of drugs and their effect on his system rendered his performance ineffective as a matter of law. We disagree.

While trial counsel initially objected to this testimony, and later testified that a follow-up objection would have been pertinent, this fact is of no consequence. Even if we assume that trial counsel's failure to further object to this testimony was unreasonable, Davenport has not demonstrated that this alleged failure on his counsel's part prejudiced the outcome of the trial.[66] Indeed, there was additional evidence from which the jury could have convicted Davenport of the offense of driving under the influence of drugs—specifically, his positive drug test for methamphetamine and other substances, and the unusual mental and physical characteristics he exhibited, as observed by the officer following the traffic stop. Accordingly, Davenport has failed to meet the burden of proving ineffective assistance of counsel on these claims.[67]

(e) *Hearsay, Speculation, Irrelevance, and Preservation of Errors.* As to Davenport's final claims that trial counsel rendered ineffective

---

[65] *See Nesbitt v. State*, 296 Ga. App. 139, 142 (3) (d) (673 SE2d 652) (2009) ("Decisions regarding when and how to raise objections are generally matters of trial strategy[.]").

[66] We note that Davenport makes no contention that there was insufficient evidence to sustain his conviction for driving under the influence of drugs to the extent that it was less safe to drive.

[67] *See Towry v. State*, 304 Ga. App. 139, 147 (2) (e) (695 SE2d 683) (2010) (in claiming that defense counsel should have objected to testimony, defendant "failed to show how the . . . witnesses' responses prejudiced him in any way, and so he [could not] succeed on this ineffective assistance claim").

assistance by failing to object to hearsay testimony, speculative testimony, and irrelevant evidence, and by failing to preserve issues for appeal, these claims are deemed abandoned because Davenport does not support them with argument or citation to authority, and "mere conclusory statements are not the type of meaningful argument contemplated" by Court of Appeals Rule 25 (a) (3).[68]

3. *Trial Court's Comments Regarding Venue and Open Container.* Finally, in Case No. A10A1751, Walsh contends that the trial court committed error by improperly commenting on the issue of venue and the sufficiency of the evidence on the open-container charge, thereby invading the province of the jury. We disagree.

Outside the presence of the jury, and after both the State and the defense had rested, the trial judge expressed her belief that venue had not been established in the case and that she was unsure as to whether there was sufficient evidence on the open-container charge.

Venue, of course, is a jurisdictional fact that must be proven by the State beyond a reasonable doubt in order to establish that the alleged crimes were committed in the county where the case is being tried.[69] And here, the State, upon hearing the trial judge's concerns about venue, requested permission to reopen the case for the purpose of establishing same. This request was granted without objection, the jury returned, and one of the officers testified to seeing and stopping the SUV in Clayton County. Thereafter, the question of venue and the open-container charge were both submitted to the jury, and the court instructed the jury as to the State's burden of proof.

As for Walsh's contention, it is improper for a judge in any criminal case, "during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."[70] Indeed, a violation of this rule is an error that requires reversal and the grant of a new trial.[71] Nevertheless, while a judge may not express an opinion or intimate to the jury what has or has not (in his or her view) been proven,[72] it

---

[68] *Id.* at 148 (2) (g) n.7 (citation and punctuation omitted); *see* Ct. App. R. 25 (a) (3) (requiring appellants to provide argument and citation to authority).

[69] *See, e.g., Jones v. State*, 272 Ga. 900, 901 (2) (537 SE2d 80) (2000); *Payne v. State*, 290 Ga. App. 589, 589-90 (2) (660 SE2d 405) (2008).

[70] OCGA § 17-8-57.

[71] *Id.*

[72] *Id.*; *see Thomas v. State*, 240 Ga. 393, 400 (3) (242 SE2d 1) (1977); *O'Hara v. State*, 241 Ga. App. 855, 859 (3) (528 SE2d 296) (2000). However, "remarks of a judge assigning a reason for his ruling are neither an expression of opinion nor a comment on the evidence." *Johnson v. State*, 246 Ga. 126, 128 (V) (269 SE2d 18) (1980); *see also Cochran v. State*, 136 Ga. App. 125, 127 (3) (220 SE2d 477) (1975). Additionally, the Supreme Court of Georgia recently held that

is well established that the purpose of this limitation "is to prevent the jury from being influenced, not to keep the judge from making up his [or her] own mind."[73]

And in the case sub judice, the trial judge's comments about venue and the open-container charge were not error because they were made outside the jury's presence, the case was reopened without any reference to the judge's opinion, and the questions were then presented to the jury. There is, then, no indication that the judge's comments in any way influenced (or even could have influenced) the jury.[74] As such, the trial judge's comments did not violate OCGA § 17-8-57. Additionally, the trial court committed no error by allowing the State to reopen the case to establish venue.[75]

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED MARCH 2, 2011 — 

*Cinque M. Axam*, for appellant (case no. A10A1750).

*Mack & Harris, Robert L. Mack, Jr.*, for appellant (case no. A10A1751).

*Tracy Graham-Lawson, District Attorney, Anece Baxter White, Assistant District Attorney*, for appellee.

---

*questioning* whether an element has been proven is not error even when made before the jury. *See State v. Gardner*, 286 Ga. 633, 634-35 (690 SE2d 164) (2010) (holding that judge's statement before jury to "Prove venue. Did you prove venue? . . . Why don't we go ahead and do that before we forget." was not error), *reversing Gardner v. State*, 296 Ga. App. 792 (676 SE2d 258) (2009).

[73] *Jones v. State*, 250 Ga. 498, 499-500 (4) (299 SE2d 549) (1983); *see O'Hara*, 241 Ga. App. at 859 (3); *Wilcox v. State*, 236 Ga. App. 235, 236 (1) (511 SE2d 597) (1999).

[74] *Compare Mitchum v. State*, 274 Ga. 75, 76 (4) (548 SE2d 286) (2001) (not error for judge to state an opinion about a witness outside presence of jury); *Green v. State*, 240 Ga. App. 774, 777 (2) (525 SE2d 154) (1999) (no error when judge stated that burden of proof was met on an issue but did so outside presence of jury and submitted question to jury); *Moore v. State*, 179 Ga. App. 488, 489 (4) (347 SE2d 318) (1986) (comment made outside jury's presence was not prejudicial); *and Hall v. State*, 151 Ga. App. 700, 700-01 (1) (261 SE2d 442) (1979) (comment during bench conference that weight of marijuana had not been proven was not error because outside presence of jury); *with Patel v. State*, 282 Ga. 412, 414 (2) (651 SE2d 55) (2007) (comment before the jury as to proof of venue was error); *Callaham v. State*, 305 Ga. App. 626, 627-28 (1) (700 SE2d 624) (2010) (judge's comment before jury regarding witness's credibility was error).

[75] *See, e.g., Dandy v. State*, 238 Ga. App. 435, 435 (2) (518 SE2d 907) (1999) ("It is within the trial court's discretionary power to permit the state to reopen its case after the close of evidence and to introduce further evidence."); *Thompson v. State*, 175 Ga. App. 645, 646 (1) (b) (334 SE2d 312) (1985) ("It is within the trial court's discretionary power to reopen a case and permit the introduction of further evidence even though the testimony is not in rebuttal of evidence offered by defendant.").